**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| **DAVID WILLIAMS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 3:23-cv-0034 |
| ) | |
| **TIMOTHY ALLEN,** ) | |
| **Defendant.** ) | |
| ) | |

**ATTORNEYS:**

**CLAIRE ANACLERIO, ESQ.**
**CRAIG M. O'SHEA, ESQ.**
**CHARLOTTE PERRELL, ESQ.**
DUDLEY NEWMAN FEUERZEIG LLP
ST THOMAS, U.S. VIRGIN ISLANDS
    *FOR PLAINTIFF DAVID WILLIAMS*

**BROOKE MALLORY RUTHERFORD, ESQ.**
**SCOT F. MCCHAIN, ESQ.**
MCCHAIN HAMM & ASSOCIATES
CHRISTIANSTED, U.S. VIRGIN ISLANDS
    *FOR DEFENDANT TIMOTHY ALLEN*

## MEMORANDUM OPINION

**MOLLOY, Chief Judge.**

    **BEFORE THE COURT** is Plaintiff David Williams' ("Williams") motion for preliminary injunction and appointment of a receiver, filed on May 24, 2024. (ECF No. 72.) Defendant Timothy Allen ("Allen") filed an opposition on May 31, 2024, (ECF No. 76), and Williams, thereafter, filed his reply on June 7, 2024. (ECF No. 78.) The Court conducted an evidentiary hearing on July 11, 2024, wherein the parties testified, and the Court admitted Plaintiff's Exhibit Nos. 1-12 into evidence. For the following reasons, the Court will grant the motion for preliminary injunction and will deny the request to appoint a receiver.

### I. FINDINGS OF FACT

    In February 2022, Williams and Allen entered into an Operating Agreement providing for the operations of AW Concordia Holdings, LLC ("Concordia Holdings"), a U.S. Virgin

Islands limited liability company that operates as an eco-resort hotel in St. John. Williams and Allen are the only two members with each possessing a 50% membership interest, and each made a capital contribution. (Pl.'s Ex. 1.) The operating agreement provides extensive language with regards to the organization and operations of Concordia Holdings, including, but not limited to, the requirement for capital contributions, the admission, expulsion and withdrawal of members, provisions for the holding of membership meetings, and the requirements for the voting on official actions of members, to name a few.

In order to obtain financing to fund operations, Concordia Holdings, on June 8, 2022, entered into a Mortgage and Security Agreement with Stone Bank in the principal amount of $4,100,000, as evidenced by the Promissory Note of even date, providing that Concordia Holdings holds fee simple title in real property located at Parcel Nos. 20 (Consolidated), 32 (roadway), 33 (roadway) and 34 (roadway), Coral Bay, St. John, U.S. Virgin Islands. (Pl's Ex. 2.) On the same date, Williams individually signed a Guarantee to induce Stone Bank to lend $4,100,000 to Concordia Holdings, by which he absolutely and unconditionally guaranteed the prompt and unconditional payment of Concordia Holdings' obligations under the Note, Security Agreement and Other Security Documents, including in the event of default. (Pl.'s Ex. 3.)

Williams testified that during the course of the operations of Concordia Holdings, he became concerned about Concordia Holdings' finances when he reviewed the company's Truist bank account. His review of the bank account revealed that, on several occasions, Allen used Concordia Holdings' funds to pay his personal American Express ("AMEX") credit card: (1) $39,482, on June 14, 2022; (2) $61,254, on July 18, 2022; (3) $36,957.48, on August 22, 2022; and (4) $23,719, on October 11, 2022. Allen did not notify Williams about these payments or provide any documentation to substantiate the payments. (Pl.'s Ex. 8.)[1] Allen testified that he thought that Williams was aware of his use of company funds to pay his AMEX card and that it seems there was miscommunication between them.

---

[1] Pursuant to section 2.06(b)(iii) of the Operating Agreement, a member needs the written approval of all members in order to "[i]ncur any indebtedness, pledge or grant Liens on any assets, or guarantee, assume, endorse, or otherwise become responsible for the obligations of any other Person in excess of $10,000 in a single transaction or series of related transactions, or in excess of $30,000 in the aggregate at any time outstanding."

Williams testified that, on November 2, 2022, he withdrew $240,000 from the Concordia Holdings Truist bank account. (Pl.'s Ex. 8.)[2] Upon withdrawal of the funds, Williams immediately contacted Allen to let him know that he acted to safeguard Concordia Holdings' funds and prevent what in his opinion was misuse of company funds based on certain withdrawals by Allen. On November 6, 2022, Williams and Allen met in Williams' office and Allen initially stated that he did not recognize that he had made certain withdrawals and, if there was something wrong that he had done, he would repay that. According to Williams, their discussion was amicable. When Williams asked Allen if he thought they could continue working together, Allen answered in the affirmative. Williams stated that he would begin to return the funds he withdrew so that they can continue operations. Williams testified that on the evening of November 6, 2022, which was a Sunday, he returned $70,000 into the Concordia Holdings Truist bank account with the plan to return the remaining amount over the same week. The Concordia Holdings' Truist bank account statement dated November 30, 2022, indicates an online mobile transfer in the amount of $70,000 made on November 8, 2022. (*Id.*)

Williams testified that on Monday, November 7, 2022, after meeting with Allen on Sunday, November 6, 2022, he received an undated letter from Attorney Leigh Goldman of Goldman Law Offices, Inc., (Pl's Ex. 4) ("Goldman's Letter"), counsel for Concordia Holdings, stating:

> As you are aware, this firm represents AW CONCORDIA HOLDINGS, LLC (the 'Company'). On or about November 2, 2022, you are believed to have, without authorization or consent, electronically moved the amount of two hundred forty thousand dollars ($240,000.00) from the account of the Company at Truist Bank to your own personal account. A copy of that transaction is attached hereto as Exhibit A. Since taking this action, you have ignored or avoided any attempts by the other member of the Company, Tim Allen to contact you regarding the return of those monies. These monies must be returned to that account, immediately and in full. As I am sure you are aware, your actions have caused the company to be in default of certain obligations to its creditors, including its USDA loan from Stone Bank, and may cause further instances of default due to its inability to make payment on the loan.

---

[2] Concordia Holdings Truist account continued receiving deposits from Concordia Eco Resort customers, $75,422 in November 2022 and $135,150.98 in December 2022, as indicated on the Concordia Truist bank statement dated December 30, 2022. (*Id.*)

> Your actions threaten the continued operations and preparation to engage in operations of the employees. Your actions threaten the Company's ability to engage in the lease and potential purchase of other properties under contract. Attached hereto is a resolution by the remaining member, Tim Allen, expelling you from membership of the Company for cause. You have no further rights as a member. You are to assume no further representation of yourself as a member or authorized representative of the Company. The Company reserves the right to avail itself of all civil and criminal remedies for the above described actions.

Allen testified that, when he met with Williams on November 6, 2022, he believed that Williams received and was aware of the Goldman Letter. On November 16, 2022, the Government of the U.S. Virgin Islands, Office of the Lieutenant Governor, Division of Corporations & Trademarks, issued a Certificate of Amendment indicating that Concordia Holdings has filed a Dissociation of Member, and that Williams' status is "Dissociated." (Pl.'s Ex. 5.)

Prior to receiving Goldman's Letter, Williams did not receive any communication from Allen or Concordia Holdings, or any notice of any meeting of the members occurring as a result of his November 2, 2022, withdrawal of funds or otherwise, as required by Section 2.05(b) of the Operating Agreement. There is no evidence that Williams provided his consent that any action can be taken without a meeting under Section 2.07(a). Thus, Allen took action to expel Williams from Concordia Holdings without: (a) Williams' consent under Section 2.07(a); (b) without providing any notice; and (c) in the absence of the required quorum consisting of the members holding at least a majority of the membership interest entitled to vote, as provided by Section 2.05(f). When Allen took action to expel Williams, Allen and Williams each held a 50% membership interest in Concordia Holdings.

After Allen's purported expulsion of Williams from being a member of Concordia Holdings, Allen, as Managing Member and individually, signed a Promissory Note on February 3, 2023, by which Concordia Holdings promised to pay to the order of Lisa L. Halbower-Fenton the principal amount of $100,000 and all accrued interest. (Pl.'s Ex. 7.)

On April 2, 2024, Stone Bank filed a complaint in the Circuit Court of Pulaski County, Arkansas, against Allen and Williams alleging breach of contract based on the loan default and the guarantee agreements made by Allen and Williams. (Pl.'s Ex. 10.) On April 26, 2024,

Stone Bank filed an action for foreclosure against Concordia Holdings in the District Court of the Virgin Islands (Case No. 3:24-cv-0027), alleging that it notified Concordia Holdings on June 8, 2023 and August 16, 2023, that it was delinquent under its loan, but Concordia Holdings failed to cure the default. (Pl.'s Ex. 9.)

Williams now seek a preliminary injunction to enjoin Allen from preventing Williams from participating in the affairs and operations of Concordia Holdings and for the appointment of a receiver.

## II. LEGAL STANDARD

"The court may issue a preliminary injunction only on notice to the adverse party," Fed. R. Civ. P. 65(a)(1), and "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). An order granting an injunction must: "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1).

"A preliminary injunction is an extraordinary remedy never awarded as of right. In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008) (citation omitted). To obtain a preliminary injunction, a movant must show that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary injunction; (3) the balance of equities favors the movant; and (4) an injunction is in the public interest. *Id.* at 20. "A preliminary injunction . . . always involves a district court's sound discretion. Key to that discretion is whether an alleged injury jeopardizes the court's ability to see a case through." *Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, No. 23-1633, 2024 WL 3406290, at *1 (3d Cir. July 15, 2024). "Case preservation is thus the main reason that the benefits of a preliminary injunction may outweigh its risks. Courts may withhold this extraordinary remedy if a plaintiff's alleged injury does not threaten to moot the case." *Id.* at *5. Courts may exercise their discretion to determine whether all four factors considered

together warrant granting preliminary relief only after the movant establishes the first two "gateway factors." *Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 103 (3d Cir. 2022). "It is well established that 'a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits.'" *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 718 (3d Cir. 2004).

### III. DISCUSSION

While the operative complaint alleges four causes of action, Williams recognizes that only Count II would be susceptible to injunctive relief. This count alleges a cause of action for breach of fiduciary duty pursuant to 13 V.I.C. § 1410(a). Section 1410(a) of the Virgin Islands Uniform Limited Liability Company Act provides:

> (a) A member may maintain an action against a limited liability company or another member for legal or equitable relief, with or without an accounting as to the company's business, to enforce:
> (1) the member's rights under the operating agreement;
> (2) the member's rights under this chapter; and
> (3) the rights and otherwise protect the interests of the member, including rights and interests arising independently of the member's relationship to the company.

The plain language of section 1410(a) allows any member of a limited liability company to maintain an action against another member of the company to enforce rights under the operating agreement. Williams argues that Allen violated the terms of the Operating Agreement by expelling him as a member of Concordia Holdings and preventing him from participating in the management and affairs of the company. *See* Pl.s' Memo. In Support of Mot. for Temporary Restraining Order and Preliminary Injunction, at 7-10, (ECF No. 73).[3] Accordingly, the Court will proceed to analyze Williams' request for injunctive relief under Count II.[4]

---

[3] In the FAC, Williams alleges that he and Allen entered into an operating agreement for the operation of Concordia Holdings, that both he and Allen had a 50% membership interest in Concordia Holdings, and that Allen attempted to expel him from the company. *See* FAC, ¶¶ 9, 11, 14, 16-18, and 26-29. Among the relief Williams seeks in this matter is to declare void any action to expel him from Concordia Holdings. *Id*. at ¶ VIII(M).

[4] Although certain allegations in Count II assert breach of duty owed to Concordia, Concordia is not a party to this action. The Court construes Williams' Count II breach of fiduciary duty as asserting his rights under the

### A. Likelihood of Success on the Merits

As mentioned above, Williams argues that, *inter alia*, Allen violated the parties' Operating Agreement by expelling him as a member of Concordia Holdings and preventing him from participating in the management and affairs of the company. To show a likelihood of success, the movant must demonstrate that its chances of proving each of the elements of the claim are "significantly better than negligible.'" *Mallet & Co. v. Lacayo*, 16 F.4th 364, 380 (3d Cir. 2021) (citation omitted).

In this matter, it is undisputed that Williams and Allen entered into an Operating Agreement for the operations of Concordia Holdings. On November 7, 2022, Allen, through his attorney, notified Williams that he would be expelled from being a member and manager of the company. Since that time, Williams has been precluded and prevented from participating in the management and affairs of Concordia Holdings. The Court concludes that the actions of Allen violated the terms of the Operating Agreement and thus, constitutes a violation of section 1410(a).

First, the evidence clearly establishes that as of November 7, 2022, Williams and Allen each held a 50% membership interest in Concordia Holdings. It is also clear that any official actions to be taken not provided for in the Operating Agreement would be made at an official meeting of the members of the company. *See* Operating Agreement, Art. II, Section 2.05.[5] In

---

Operating Agreement, the Virgin Islands Uniform Limited Liability Company Act, and rights and interests as a 50% member of Concordia. Accordingly, the Court finds that the relief for reinstatement as a member of Concordia Holdings is encompassed under his cause of action as alleged in Count II and the Court, therefore, will analyze his request for injunctive relief under that count.

[5] Section 2.07 of the Operating Agreement allows actions to be voted on by members without a meeting and without prior notice in certain limited situations. This section provides:

(a) Notwithstanding the provisions of Section 2.06 any action that is to be voted on, consented to, or approved by the Members may be taken without a meeting, without prior notice, and without a vote if a written consent or consents signed by a Member or Members holding not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all of the Members entitled to vote thereon were present and voted are delivered to the Company at its principal office of the Company by hand or by certified or registered mail, return receipt requested within 60 days of the earliest dated consent delivered to the Company with respect to such action. A record shall be maintained by the Company of each such action taken by written consent of a Member or Members.
(b) The Company shall give prompt notice to any Member who does not consent in writing of any action approved by less than all the Members without a meeting.

order for a meeting to be held, at least 10 days written notice must be provided to the members. *Id.* at Section 2.05(b). Section 2.04 of the Operating Agreement allows for the expulsion of a member upon the unanimous vote of the other Members, excluding the Member to be expelled, if that Member engages in certain prohibited activities. However, before any action can be taken to expel a member, a meeting must be called with the appropriate notice to all members. At that meeting, "no action may be taken by the Members unless the appropriate quorum is present at a meeting." *Id.* at Section 2.05(f). As stated in the Operating Agreement, "[a] quorum of any meeting of the Members shall require the presence whether in person or by proxy, of the Members holding at least a majority of the Membership Interests entitled to vote."

There is no evidence in this case, that any member of Concordia Holdings called a meeting to discuss the expulsion of Williams. Furthermore, since Williams and Allen each held a 50% membership interest, neither individual held a majority interest in Concordia Holdings, and therefore, it would be virtually impossible for there to be a quorum unless **both** Williams and Allen were present. In the absence of a majority of the members holding at least a majority interest in Concordia Holdings being present at a company meeting, the company cannot and could not take any official action.

Simply stated, Allen had no authority to unilaterally expel Williams as a member of Concordia Holdings. The purported actions of Allen to oust Williams as a member is null and void from its inception. In the absence of express language, this Court holds that the Operating Agreement does not contemplate that one non-majority member of a two-member limited liability company, with each holding a 50% membership interest, would have the authority to expel the other non-majority member. Any other conclusion would be non-sensical. Accordingly, the Court finds that Williams' chances of prevailing on Count II is "significantly better than negligible.'" *Mallet*, 16 F.4th at 380.

B. **Likelihood of Irreparable Harm**

---

Even if appliable, there is no evidence indicating that the above procedure was followed.

To show irreparable harm, the movant must demonstrate potential harm which cannot be remedied by a legal or an equitable remedy after a trial, which means that the preliminary injunction is the only way to protect the movant from harm. *Siemens USA Holdings Inc v. Geisenberger*, 17 F.4th 393, 408 (3d Cir. 2021). However, a risk of harm is not sufficient, and the movant must make a clear showing of immediate irreparable harm. *ECRI v. McGraw-Hill, Inc.,* 809 F.2d 223, 226 (3d Cir. 1987). The required immediate irreparable harm must exist at the time the preliminary injunction is issued. *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1264 (3d Cir. 1985). "As a general matter, 'a purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement,' [but] 'an exception exists where the potential economic loss is so great as to threaten the existence of the movant's business.'" *Minard Run Oil Co. v. U.S. Forest Serv.,* 670 F.3d 236, 255 (3d Cir. 2011) (citations omitted).

The evidence establishes that Stone Bank has commenced an action for foreclosure of the property that Concordia Holdings holds in fee simple and an action against Williams, individually targeting his personal assets. Due to his expulsion from Concordia Holdings, Williams is prevented from taking any legal action on behalf of Concordia Holdings, which defaulted on the mortgage. There is an imminent and substantial risk that the foreclosure action will result in the complete termination of Concordia Holdings' operations. The irreparable harm to Williams, absent the preliminary injunction, is his inability to exercise his contractual rights, including to be involved in the management and affairs of Concordia Holdings. Although generally, "[t]he inability to exercise contractual rights does not amount, in itself, to irreparable harm for the purposes of a preliminary injunction," *Fed. Ins. Co. v. Dencity, Inc.*, No. SACV071458DOCRNBX, 2008 WL 11342968, at *4 (C.D. Cal. Jan. 28, 2008), "courts have recognized that economic loss may constitute 'irreparable harm' where a plaintiff's alleged damages are unrecoverable," such as when "losses resulting from [the movant's] inability to exercise rights to restrict stock and stock options, will likely be unrecoverable." *Clarke v. Off. of Fed. Hous. Enter. Oversight*, 355 F. Supp. 2d 56, 65–66 (D.D.C. 2004); *Wisdom Imp. Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 115 (2d Cir. 2003) (finding

that "a bargained-for minority right to participate in corporate management has value in and of itself and a denial of that right, without more, can give rise to irreparable harm").

Williams' contractual rights to be involved in the management and affairs of Concordia Holdings will forever be extinguished if the company's assets are foreclosed and the company is dissolved, in which case there will be no remedy available to Williams in this action. *See Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.*, 427 F. Supp. 2d 491, 498 (S.D.N.Y. 2006) (finding that "'the denial of a controlling ownership interest in a corporation,' as well as '[c]onduct that unnecessarily frustrates efforts to obtain or preserve the right to participate in the management of a company,' may constitute irreparable harm" and noting that "irreparable injury has been found in '[t]he dilution of a party's stake in, or a party's loss of control of, a business.'") (citations omitted); *Yusuf v. Hamed*, 59 V.I. 841, 856 (2013) (finding that "the Superior Court did not clearly err in finding that irreparable harm was likely, given that Hamed's loss of control of a business that he has the legal right to co-manage 'would be irreparable by its very nature.'"). Since, in the circumstances of this case, the ongoing foreclosure proceeding threatens the existence of Williams' business, Concordia Holdings, in which he holds 50% interest, the Court finds that preventing the imminent harm to Williams is necessary at this time. If Concordia Holdings is dissolved, any favorable judgment in this case, in the absence of the preliminary injunction, will be inadequate and useless to Williams. *See Delaware State Sportsmen's Ass'n, Inc.*, 2024 WL 3406290, at *4 ("Sometimes, harm threatens to moot a case, as when one party's conduct could destroy the property under dispute, kill the other party, or drive it into bankruptcy, 'for otherwise a favorable final judgment might well be useless.'") (quoting *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975)). The Court finds that Williams demonstrated the likelihood of irreparable harm in the absence of an injunction based on the imminent risk posed to his contractual rights that will forever be lost if Concordia ceases to exist.

### C. Balance of Equities

"The third preliminary injunction factor requires [courts] to 'balance the parties' relative harms; that is, the potential injury to the plaintiffs without this injunction versus the potential injury to the defendant with it in place.'" *Sec. & Exch. Comm'n v. Chappell*, No. 23-

2776, 2024 WL 3335652, at *18 (3d Cir. July 9, 2024) (quoting *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 143 (3d Cir. 2017).

Any harm to Allen from the preliminary injunction reinstating Williams as a member of Concordia is significantly lesser than the harm to Williams in the absence of the preliminary injunction. The Court does not perceive that any monetary or other harm will attend Allen as a result of the preliminary injunction, and Allen does not assert monetary or other harm. The preliminary injunction reinstating Williams as a member of Concordia Holdings while this action is pending will only put Allen in the position that he agreed to be in when he formed Concordia Holdings with Williams as an equal member holding 50% interest. The Court finds that, under the circumstances, the balance of equities tips in favor of Williams. *First Bancorp v. Christopher*, No. CV 2016-0060, 2018 WL 3715711, at *13 n.13 (D.V.I. Aug. 2, 2018) (finding that the harm to plaintiffs "is significantly greater than the potential loss to the enjoined parties").

### D. Public Interest

"As a practical matter, if a plaintiff demonstrates both likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *Chappell*, at *18 (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994)). "Nonetheless, district courts should award preliminary injunctive relief only upon weighing all four factors." *Am. Tel. & Tel. Co.*, 42 F.3d at 1427 n.8. In assessing public interest, courts consider the effect of the preliminary injunction, on the public, for example, whether "specific acts presumptively benefiting the public" [would] be halted until the merits could be reached and a determination made as to what justice required. The public interest [is] in specific action rather than in the vindication of an abstract principle[.]" *Cont'l Grp., Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 358 (3d Cir. 1980).

Although the competing interests in this action are private, the Court notes that the public has a specific economic interest in continuing Concordia's existence, in light of the fact that Concordia operates Concordia Eco Resort on its property, benefiting the local economy. The Court finds that the effect on the public of the preliminary injunction reinstating

Williams' rights under the Operating Agreement, will not serve to vindicate an abstract principle; rather, the effect will be to protect the public interest in benefits to the local economy. The Court finds that protection of the public interest in the circumstances of this case favors the preliminary injunction.

### E. Appointment of Receiver

Williams commenced this action individually and derivatively on behalf of Concordia Holdings, naming Concordia Holdings as a nominal defendant. On February 21, 2024, the Court ordered the parties to brief whether diversity jurisdiction exists, given that in a derivative claim, a company is a necessary party and a real party in interest, not simply a nominal party. Williams is a citizen of Georgia, Allen is a citizen of the Virgin Islands and Concordia Holdings is a citizen of both Georgia and the Virgin Islands. (ECF No. 43.) Instead of responding directly to the Court's inquiry, Williams elected to file a motion to amend complaint removing Concordia Holdings as a nominal party and deleted the "accounting" and "injunction" counts. As Concordia Holdings is no longer a party to this action, the Court will not consider any claims or arguments asserted by Williams on behalf of Concordia Holdings. There is no allegation that non-party Concordia Holdings acted "in active concert or participation with the parties or the parties' officers, agents, servants, employees, and attorneys," as provided by Fed. R. Civ. P. 65(d)(2)(C). *Elliott v. Kiesewetter*, 98 F.3d 47, 56 (3d Cir. 1996) ("A non-party cannot be bound by the terms of an injunction unless the non-party is found to be acting 'in active concert or participation' with the party against whom injunctive relief is sought.") (citing Fed. R. Civ. P. 65(d)). Since Concordia Holdings is not a party to this action, the Court has no personal jurisdiction over Concordia Holdings, making Williams' request to appoint a receiver without merit.

### F. Security

As stated above, the Court finds that Williams is entitled to preliminary injunctive relief restraining Allen from precluding Williams in participating in the management and affairs of Concordia Holdings. However, pursuant to Rule 65(c) of the Federal Rule of Civil Procedure, "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, for the payment of such costs and damages as may be

incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Although "the amount of the bond is left to the discretion of the court, the posting requirement is much less discretionary." *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 103 (3d Cir. 1988) ("While there are exceptions, the instances in which a bond may not be required are so rare that the requirement is almost mandatory.") In other words, Rule 65(c) "mandates that a court when issuing an injunction must require the successful applicant to post adequate security." *Id.*

Williams posted security with the court in the amount of $10,000. (Pl.'s Ex. 11.) Allen does not argue that allowing Williams to participate in the management and affairs of the operations of Concordia Holdings will cause him any financial loss. Under the circumstances of this case, the Court finds that the security in the amount of $10,000 is appropriate.

## IV. CONCLUSION

Since Williams established the preliminary injunction requirements, the Court will grant his motion for preliminary injunction to the extent that he seeks his reinstatement as a member of Concordia Holdings and deny his request to appoint a receiver. An appropriate Order follows.

**Date:** September 18, 2024                                /s/ *Robert A. Molloy*
                                                            **ROBERT A. MOLLOY**
                                                            **Chief Judge**